# Exhibit 1



# IN THE
## TENTH COURT OF APPEALS

Nos. 10-08-00292-CR, 10-08-00293-CR,
10-08-00294-CR, and 10-08-00295-CR

**HELEN MAYFIELD,**
                                                                                    **Appellant**

 v.

**THE STATE OF TEXAS,**
                                                                                    **Appellee**

From the 361st District Court
Brazos County, Texas
Trial Court Nos. 07-05453-CRF-361, 07-05454-CRF-361,
07-05455-CRF-361, and 07-05456-CRF-361

## MEMORANDUM OPINION

A jury convicted Helen Mayfield of forgery, and the trial court sentenced her to twenty-four months in State jail. Mayfield challenges: (1) the legal and factual sufficiency of the evidence; (2) the constitutionality of the forgery statute; (3) the State's designation of experts; (4) the denial of her motion to sever; (5) the admission of her recorded statements; (6) the State's closing argument; (7) the denial of her motion to suppress; (8) the denial of her motion for mistrial; (9) the State's alleged failure to

correct perjured testimony and disclose exculpatory evidence; (10) the admission of extraneous-offense evidence; (11) the denial of her motion for grand jury testimony; and (12) the appointment of standby counsel.  We affirm.

## FACTUAL BACKGROUND

Mayfield was charged with passing twelve forged American Express traveler's checks.  A teller at First National Bank testified that Mayfield expressed no concerns about cashing the first two checks.  Karen Urban, First National's former senior vice-president of security, testified that the checks contained misspellings, slanted numbers, inconsistent coloring, and micro-ink that was not machine readable, which is common for counterfeit items.  American Express investigator Robbie Henegar testified that the checks purported to be the act of American Express, but were counterfeit.  They contained invalid water marks, holograms, spellings, security brands, and numbers.

Urban further testified that two wire transfers to Mayfield's account had been reversed as fraudulent.  Mayfield told Urban that she was expecting the wire transfers per business contracts.  She denied being the victim of a scam, but admitted having problems with scams in the past.  Mayfield admitted passing the traveler's checks, but claimed that the checks were payments from a man with whom she had a contract.

Mayfield told Detective James Arnold that the transactions had been ongoing for about two years, were not her specialty, and had not previously been engaged in. Arnold testified that Mayfield mentioned consignments and claimed to be the victim of a scam.  Mayfield gave Arnold a packet of documents and claimed possession of other documents, which she never provided.  She did not claim to be an international lawyer

or a back-order payment representative. She claimed that the traveler's checks were a customs fee. One of her emails, however, indicated that the checks were a loan.

During a search of Mayfield's home, police found counterfeit checks, Moneygram orders, and gift checks. At trial, witnesses testified to three checks that were not authorized. Senior Corporal Randy Turner responded to a forgery call regarding a check from S'Kool Smartz, Inc. Mayfield told Turner that she received the check as a business investment. In a supplemental report, Detective Patrick Bassinger stated that Mayfield said she was trying to verify the check and did not negotiate the check. Turner, Arnold, and a bank employee testified to the contrary.

Teresa Cook testified that the $850 Moneygram orders were not authentic. They were not machine -printed, contained a yellow heat-seeking spot instead of a pink spot, and lacked magnetic ink. Ninety percent of counterfeit orders are for $850.

Sergeant Billy Couch testified that he found several $100 American Express gift checks in Mayfield's home. The checks were found in an envelope postmarked Cotonou Jericho Republic Du Benin. Henegar testified that the gift checks were not authorized by American Express.

Arnold testified that Mayfield maintained approximately thirty bank accounts, through which hundreds of thousands of dollars had traveled. Over one-hundred wire transfer receipts were found in Mayfield's home, sent by either Mayfield or others, to California, New York, and several foreign countries. Arnold learned that Mayfield's Western Union privileges had been suspended. He received three suspected activity reports regarding Mayfield, two of which were filed by Western Union.

Arnold also discovered the following email from Mayfield:

> I received your checks but am afraid to use them. If they are forgeries, I can go to jail. This is a state jail forgery. I cannot take a chance. More likely than not they are forgeries.

Mayfield had not voluntarily disclosed this email, which was written the day before she cashed the first two traveler's checks.

Secret Service agent James Napolitano testified that common terms used in a scam include "payment representative" and "consignment." Napolitano testified that signs of active participation include the use of Moneygram and Western Union to transfer money, the use of numerous accounts, and failure to declare income on tax returns. He explained that people often use emails to show innocence, but when their homes are searched, investigators find other non-disclosed documents. Too many documents, too much activity, and notification of the scam indicates that a person is probably an "active participant" who knew something was wrong, but chose to continue their involvement "as a way to make a living." Napolitano testified that Mayfield has not filed tax returns since 2002.

Christopher McCloskey testified that he probably warned Mayfield about email scams and admitted that Mayfield asked him to wire money. McCloskey believed that Mayfield was a victim. Dale Calcarone testified that he knew about the traveler's checks because Mayfield told him that she handled other people's accounts.

Mayfield testified that she practices international law and became a back-order payment representative after talking with some international attorneys. She admitted being warned about email scams. Mayfield testified that she eventually received some

bad documents from Benin and determined that documents from this location are probably false. Mayfield testified that she did nothing with documents that could not be verified. She testified that some checks looked questionable, but were verified by the bank. She testified that other checks were not verified, such as an Ontario check that was initially verified and placed on hold. She explained that the S'Kool Smartz check was a loan, but that it was a bad check and she was scammed. She also knew one of the other checks was a scam. She stopped cashing Canadian checks.

Mayfield testified that she would do no more business with a company after receiving a bad check. She attempted to obtain loans from investment companies, but never received any good money. Specifically, she testified that several of the counterfeit checks were loans. She denied getting any money out of the transactions and testified that only one check was ever cashed as part of the back-order payment business. She sent paperwork to an ex-police officer to review for authenticity. She admitted communicating with people even after she was warned about them.

Mayfield testified that she received the traveler's checks as customs fees for a consignment. She testified that consignments are "pies in the sky" and "mirages," but are fine when the internet is not involved. She advised the bank teller of her concerns regarding the checks. She assumed that First National verified the checks. She never expected that First National would not call American Express to verify the checks. She had attempted to do so herself, but was referred to First National. She did not reimburse First National because the bank would not sign a release.

## LEGAL AND FACTUAL SUFFICIENCY

In points one and two, Mayfield challenges the legal and factual sufficiency of the evidence to support her forgery conviction, specifically knowledge and intent.

To prove the offense of forgery by passing, the State must show that the defendant: (1) with intent to defraud or harm another (2) passed (3) a writing (4) that purported to be the act of another and (5) that other person did not authorize the act. *See* TEX. PEN. CODE ANN. § 32.21(a)(1)(B), (b) (Vernon Supp. 2009); *Williams v. State*, 688 S.W.2d 486, 488 (Tex. Crim. App. 1985). Intent to defraud or harm requires proof of knowledge that the instrument is forged. *See Williams*, 688 S.W.2d at 488. Intent may be established by circumstantial evidence. *Id*. Intent may be inferred if the State establishes that the defendant knew the instrument was forged. *See Beaty v. State*, 156 S.W.3d 905, 909 (Tex. App.—Beaumont 2005, no pet.). "A finding of such knowledge generally requires evidence of at least 'suspicious circumstances' showing that the defendant knowingly passed the forged check." *Laws v. State*, No. 14-00-01093-CR, 2001 Tex. App. LEXIS 7576, at *11 (Tex. App.—Houston [14th Dist.] Nov. 8, 2001, no pet.) (not designated for publication).

Mayfield contends that the evidence is legally and factually insufficient because: (1) she did not forge the traveler's checks; (2) she signed her own name on the checks; (3) she did not know that the checks were counterfeit; (4) she merely received the checks in the mail; and (5) she did not profit from the transactions. However, several suspicious circumstances support a finding of intent and knowledge.

First, to be guilty of passing a forged check, it was unnecessary that Mayfield be the actual maker of the check. *See McFarland v. State*, 605 S.W.2d 904, 907 (Tex. Crim. App. 1980). Under § 32.21(a)(1)(B), it is sufficient that the person "utters (or passes, issues, etc.)…a writing that is forged." *Id*. Henegar testified that American Express did not authorize the checks. The checks purported to be the act of American Express, but were actually counterfeit. Mayfield admitted passing the checks.

Second, the traveler's checks were payable to Mayfield; thus, signing her own name on the checks was the only way to deposit the check. *See Laws*, 2001 Tex. App. LEXIS 7576, at *16. Signing her own name does not negate intent or knowledge.

Third, Urban and Henegar testified to numerous defects on the face of the checks. The day before cashing the first two checks, Mayfield wrote an email expressing concerns that the checks were forgeries. By her own admission, she took the checks to the bank to verify them. Four days later, she cashed the remaining checks. This evidence suggests an awareness of the checks' fraudulent nature. *See Velu v. State*, No. 10-07-00327-CR, 2009 Tex. App. LEXIS 1353, at *11-13 (Tex. App.—Waco Feb. 25, 2009, pet. ref'd) (not designated for publication); *see also Laws*, 2001 Tex. App. LEXIS 7576, at *13, 15.

Fourth, Mayfield gave conflicting stories regarding the purpose of the traveler's checks, *i.e.*, a customs fee, part of a contract, and a loan. The jury was entitled to consider these conflicts as evidence of guilt and bore the burden of resolving such conflicts either for or against Mayfield. *See Velu*, 2009 Tex. App. LEXIS 1353, at *8-9; *see also Kemmerer v. State*, 113 S.W.3d 513, 516 (Tex. App.—Houston [1st Dist.] 2003, pet.

ref'd); *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008); *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000).

Fifth, Napolitano's testimony establishes that Mayfield has engaged in activities and used terminology that suggests she is an active participant in the scam. Intent and knowledge may be inferred "from any facts which tend to prove its existence, including the acts, words, and conduct of the accused." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

Finally, forgery by passing "does not require a showing that the defendant actually received consideration in exchange for the check." *Landry v. State*, 583 S.W.2d 620, 623 (Tex. Crim. App. 1979); see *McGee v. State*, 681 S.W.2d 31 (Tex. Crim. App. 1984); see also *Velu*, 2009 Tex. App. LEXIS 1353, at *10-11.

In summary, the jury could reasonably conclude that Mayfield, a licensed attorney who knew about email scams and had prior problems with such scams, was not the victim of a scam, but knew that the traveler's checks were fraudulent and chose to cash them. Knowing the checks to be fraudulent, but making the conscious decision to attempt to cash them, evidences intent to defraud or harm another. See *Velu*, 2009 Tex. App. LEXIS 1353, at *13; see also *Beaty*, 156 S.W.3d at 909.

Viewing all the evidence in the light most favorable to the verdict, the jury could reasonably conclude, beyond a reasonable doubt, that Mayfield committed the offense of forgery. See *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); see also *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). The proof of guilt is not so weak nor the conflicting evidence so strong as to render the jury's verdict

clearly wrong or manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Because the evidence is legally and factually sufficient to sustain Mayfield's forgery conviction, we overrule points one and two.

## THE FORGERY STATUTE

In point three, Mayfield argues that section 32.21 of the Texas Penal Code, which defines "forgery," is unconstitutionally vague and overbroad and unconstitutional as applied. However, facial and "as applied" challenges to the constitutionality of a statute must be raised at trial, not for the first time on appeal. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *see also Flores v. State*, 245 S.W.3d 432, 437 n.14 (Tex. Crim. App. 2008). Because Mayfield failed to challenge the constitutionality of the forgery statute at trial, point three is not preserved for appellate review.

## EXPERT WITNESSES

In point four, Mayfield challenges the State's designation of experts.[1] She first complains that the State designated experts by placing a "slash" after the names; yet, she did not object to any such defects. *See* TEX. R. APP. P. 33.1(a). She also complains that the trial court failed to conduct *Daubert* hearings, but she never requested any such hearings. *See Stephens v. State*, 276 S.W.3d 148, 153 (Tex. App.—Amarillo 2008, pet. ref'd); *see also Scherl v. State*, 7 S.W.3d 650, 655 (Tex. App.—Texarkana 1999, pet. ref'd). Finally, she complains about the denial of her requests to voir dire Detective Arnold

---

[1] Mayfield contends that the trial court refused to conduct hearings on her pre-trial motions for State's witnesses and disclosure of expert witnesses. The trial court held two different pre-trial hearings, during which Mayfield could have urged her motions.

and Agent Napolitano. However, she did not ask to take Napolitano on voir dire. At the time she asked to take Arnold on voir dire, Arnold was about to testify to Mayfield's delivery of emails to him and her purpose for doing so, not his expert opinion. *See* TEX. R. EVID. 701; *see also* TEX. R. EVID. 705(b); *Goss v. State*, 826 S.W.2d 162, 168 (Tex. Crim. App. 1992); *Meier v. State*, No. 05-08-00486-CR, 2009 Tex. App. LEXIS 2051, at *21-22 (Tex. App.—Dallas Mar. 25, 2009, no pet.) (not designated for publication). Under these circumstances, point four is not preserved for appellate review.

## MOTION FOR SEVERANCE

In point five, Mayfield challenges the denial of her motion to sever offenses. Mayfield did not urge her motion to sever until after the jury was sworn and testimony had begun. Because her motion was not timely raised, point five is not preserved for appellate review. *See Thornton v. State*, 986 S.W.2d 615, 617-18 (Tex. Crim. App. 1999).

## ADMISSION OF RECORDINGS AND TRANSCRIPTS

In point six, Mayfield challenges the admission of recordings and transcripts of her statements because the tapes were never disclosed and contain "discrepancies."

Detective Arnold testified that exhibits 4B, 4C, and 4D are true and accurate recordings of his conversations with Mayfield. Transcripts for exhibits 4C and 4D were published to the jury. The trial court instructed the jury on the use of transcripts. The trial court overruled Mayfield's objections to these exhibits.

The State represented that the recordings were disclosed to Mayfield before trial. Even assuming they were not, *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) does "not apply when the appellant was already aware of the information."

*Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). Mayfield knew she made the statements and was aware of the contents of those statements because she was present when they were made. *See id*.; *see also Pollard v. State*, No. 09-06-00294-CR, 2007 Tex. App. LEXIS 7302, at *13 (Tex. App.—Beaumont Sept. 5, 2007, pet. ref'd) (not designated for publication). The record further contains authenticating testimony from a witness with knowledge, Arnold, that the recordings are what they are "claimed to be." *See* TEX. R. EVID. 901(b)(1); *see also Angleton v. State*, 971 S.W.2d 65, 67-68 (Tex. Crim. App. 1998); *Ball v. State*, No. 10-04-00093-CR, 2005 Tex. App. LEXIS 2575, at *3-4 (Tex. App.—Waco Mar. 30, 2005, no pet.) (not designated for publication). There is no affirmative evidence of any alterations to the tapes. *See Ballard v. State*, 23 S.W.3d 178, 183 (Tex. App.—Waco 2000, no pet.). We overrule point six.

## CLOSING ARGUMENT

In point seven, Mayfield contends that the State engaged in improper closing arguments by expressing belief regarding her guilt or the truth of her testimony.

During closing arguments, the State's attorney stated:

> …the defendant in this case is nothing more than a fraud. She is a scam artist. Since 2002, she has pulled off scam after scam after scam and she has profited off of scam after scam after scam; and I submit to you that she has come before you-all all through this week and she is trying to pull off yet another scam, perhaps her greatest scam of all.

The prosecutor later argued, "There are two things that Miss Mayfield said when she took the stand that were true. My name is Helen Mayfield, and I'm a lawyer. Everything else was a lie." Mayfield did not object to either argument.

Mayfield contends that it was unnecessary for her to object because her substantial rights were affected. It is an established rule that "a defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *see Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004); *see also Godsey v. State,* 989 S.W.2d 482, 496 (Tex. App.—Waco 1999, pet. ref'd). Because improper jury argument may not be raised for the first time on appeal, point seven is not preserved for appellate review. *See Cockrell*, 933 S.W.2d at 89; *see also Threadgill,* 146 S.W.3d. at 670; *Moreno v. State,* 195 S.W.3d 321, 329 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

## MOTION TO SUPPRESS

In point eight, Mayfield challenges the denial of her motion to suppress, arguing that (1) the State admitted a search warrant and affidavit different from the one with which she was served; (2) the warrant is not supported by probable cause; (3) the warrant does not name an offense; (4) there is no nexus between the place searched and the evidence; (5) the affidavit contains false statements; (6) section 312.014 of the Government Code and articles 18.01 and 38.23 of the Code of Criminal Procedure were violated; and (7) the warrant is overbroad.

We first note that the trial court did not abuse its discretion by admitting a certified copy of the search warrant and affidavit. *See* TEX. R. EVID. 902(4); *see also Hooper v. State*, No. 03-08-00125-CR, 2009 Tex. App. LEXIS 7880, at *19 (Tex. App.—Austin Oct. 9, 2009, no pet.) (not designated for publication).

Next, Mayfield's probable cause contention appears to be based on her complaint that the warrant and affidavit do not establish an offense. In his affidavit, Arnold explained that First National made a forgery report regarding the traveler's checks that were cashed by Mayfield and returned as counterfeit. He detailed his subsequent follow-up investigation and concluded that Mayfield was "actively involved" in a Nigerian scam. These facts allege the offense of forgery by passing. *See* TEX. PEN. CODE ANN. § 32.21(a)(1)(B), (b). The warrant and affidavit need not adhere to the "strict technical requirements imposed on charging instruments." *Vega v. State*, 680 S.W.2d 515, 517 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd).

Finally, during the suppression hearing, Mayfield did not raise a nexus argument, identify any false statements in the affidavit,[2] argue that the warrant was overbroad, or do more than cite to sections of the United States and Texas Constitutions or the Code of Criminal Procedure. These global arguments made at trial are not sufficiently specific to preserve for our review Mayfield's remaining challenges to the search warrant. *See* TEX. R. APP. P. 33.1(a); *see also Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005); *Noland v. State*, No. 10-07-00260-CR, 2009 Tex. App. LEXIS 4817, at *7-8 (Tex. App.—Waco June 24, 2009, pet. ref'd) (not designated for publication); *Armstrong v. State*, No. 10-08-00114-CR, 2009 Tex. App. LEXIS 2971, *5-6 (Tex. App.—Waco Apr. 29, 2009, no pet.) (not designated for publication). We overrule point eight.

---

[2] At most, Mayfield challenged statements regarding the cashing of checks in 2002. The record is unclear as to which statements Mayfield refers.

## MOTION FOR MISTRIAL

In point nine, Mayfield challenges the denial of her motion for mistrial.

The State asked Detective Arnold about a man who wired money to Mayfield: "Emil Sheringer is about to go to trial in New York City for wire fraud and money laundering –." Mayfield objected on grounds of leading. The trial court overruled the objection. The State continued:

> State: Emil Sheringer, is he about to go on trial in New York City for money laundering, wire fraud, and mail fraud?
>
> Arnold: Yes, sir, at least at the time --
>
> Mayfield: Objection, relevance, Your Honor.

The trial court sustained the objection and granted Mayfield's request for an instruction to disregard the State's question, but denied Mayfield's motion for a mistrial.

Although Mayfield evidently knew the question was objectionable when asked the second time, she did not object until after the grounds for the objection were apparent and the objectionable question had been asked and answered. Under these circumstances, her objection was untimely. *See Dinkins v. State*, 894 S.W.2d 330, 355 (Tex. Crim. App. 1995); *see also Zmolik v. State*, No. 10-09-00281-CR, 2010 Tex. App. LEXIS 1912, at *5-7 (Tex. App.—Waco Mar. 10, 2010, no pet.) (not designated for publication). We overrule point nine.

## DUTY OF PROSECUTOR

In point ten, Mayfield contends that the prosecutor violated a duty to correct perjured testimony and disclose exculpatory evidence.

Mayfield argues that five of the State's witnesses committed perjury. At no time did she object to any allegedly false testimony or the State's use of such testimony. This complaint is not preserved for appellate review. *See Davis v. State*, 276 S.W.3d 491, 499-500 (Tex. App.—Waco 2008, pet. denied).

Mayfield also argues that the State failed to disclose exculpatory evidence and concealed evidence, including her statements, emails, files, wire transfer receipts, communications, and tapes of any items being cashed. As previously stated, *Brady* does not apply to evidence of which Mayfield is aware. *See Hayes*, 85 S.W.3d at 815; *see also Pollard*, 2007 Tex. App. LEXIS 7302, at *13.

Mayfield further contends that the State failed to advise the jury that obtaining a loan, accepting money for/from a client, or wiring one's own funds are not crimes. The record does not show that the State ever suggested that these were criminal acts or that Mayfield had committed an offense by engaging in such acts. This complaint presents nothing for our review. *See Johnson v. State*, No. 10-07-00315-CR, 2009 Tex. App. LEXIS 5304, at *7-8 (Tex. App.—Waco July 8, 2009, no pet.) (not designated for publication).

Finally, Mayfield argues that the State lied, coached witnesses to lie, fabricated emails, altered documents, and failed to disclose warrantless searches of her home and car. These are conclusory allegations that are not supported by the record. *See Khoshayand v. State*, 179 S.W.3d 779, 783 (Tex. App.—Dallas 2005, no pet.); *see also Hudson v. State*, No. 03-04-00733-CR, 2006 Tex. App. LEXIS 7280, at *15-16 (Tex. App.—Austin Aug. 18, 2006, no pet.) (not designated for publication). We overrule point ten.

## ADMISSION OF CHARACTER EVIDENCE

In point eleven, Mayfield challenges the admission of improper character evidence in the form of alleged honor code violations, wire transfers, extraneous checks, and American Express gift checks.

First, the record shows that the State abandoned its request to introduce evidence of alleged honor code violations. Second, when Detective Arnold testified about numerous wire transfers, Mayfield did not object. *See* TEX. R. APP. P. 33.1(a); *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Third, Mayfield did not object when other witnesses, including herself, were subsequently asked about and/or testified to one or more of the four extraneous checks.³ *See Lasher v. State*, 202 S.W.3d 292, 295 n.1 (Tex. App.—Waco 2006, pet. ref'd); *see also Velu*, 2009 Tex. App. LEXIS 1353, at *26-27 n.2. Finally, when the State admitted the gift checks, Mayfield had "no objections." *See Swain*, 181 S.W.3d at 368; *see also Grisso v. State*, 264 S.W.3d 351, 354 (Tex. App.—Waco 2008, no pet.). Under these circumstances, we overrule point eleven.

## GRAND JURY TESTIMONY

In point twelve, Mayfield challenges the denial of her motion for disclosure of grand jury transcripts. At trial, the State represented that no transcript exists. The record does not show otherwise. Moreover, Mayfield did not advise the trial court of a "particularized need" for the transcripts, nor has she done so on appeal. TEX. CODE

---

³ Mayfield contends that she received a running objection to the admission of extraneous-offense evidence. According to the record, however, standby counsel requested a contemporaneous limiting instruction to accompany the admission of each extraneous offense. The trial court granted a running objection to any instance where no contemporaneous limiting instruction was given. Mayfield neither requested nor received a running objection to admission of extraneous-offense evidence itself.

Mayfield v. State     Page 16

CRIM. PROC. ANN. art. 20.02(d) (Vernon Supp. 2009); *see Martinez v. State*, 507 S.W.2d 223, 225-26 (Tex. Crim. App. 1974). Accordingly, we overrule point twelve.

## APPOINTMENT OF STANDBY COUNSEL

In point thirteen, Mayfield contends that the trial court violated the Sixth Amendment by appointing standby counsel, whom she alleges was ineffective.

Mayfield did not object to the appointment of standby counsel or standby counsel's participation at trial. *See Jordan v. State*, No. 08-05-00286-CR, 2007 Tex. App. LEXIS 4118, at *17-19 (Tex. App.—El Paso May 24, 2007, no pet.) (not designated for publication). Mayfield "controlled the organization and content of [her] defense, made motions, argued points of law, participated in voir dire, questioned witnesses, and addressed the court and jury at appropriate times throughout the course of the proceedings." *Lopez v. State*, No. 08-05-00032-CR, 2007 Tex. App. LEXIS 666, at *7-8 (Tex. App.—El Paso Jan. 31, 2007, pet. ref'd) (not designated for publication). Once she "competently and intelligently invoke[d] [the] right to self-representation," she waived the right to appointed counsel and cannot "attack [] standby counsel as being ineffective." *Felton v. State*, No. 05-92-02442-CR, 1994 Tex. App. LEXIS 3562, at *24 (Tex. App.—Dallas Dec. 6, 1994, no pet.) (not designated for publication) (citing *Dunn v. State*, 819 S.W.2d 510, 526 (Tex. Crim. App. 1991)); *see Flores v. State*, 789 S.W.2d 694, 697 (Tex. App.—Houston [1st Dist.] 1990, no pet.). We overrule point thirteen. *See McKaskle v. Wiggins*, 465 U.S. 168, 184, 104 S. Ct. 944, 954, 79 L. Ed. 2d 122 (1984).

## OTHER POINTS OF ERROR

Throughout her thirteen points of error, Mayfield has argued that: (1) the attorney-client privilege bars prosecution; (2) the pre-emption doctrine bars prosecution; (3) the indictment should be dismissed; and (4) the justice of the peace court and county court at law lacked jurisdiction to allege a felony. Aside from occasionally citing inapplicable authority, Mayfield fails to make arguments or cite authorities to support her contentions. We will not make Mayfield's arguments for her. Because these allegations are inadequately briefed, they are waived. *See* TEX. R. APP. P. 38.1(h) and (i); *see also Wyatt*, 23 S.W.3d at 23 n.5; *Johnson v. State*, 263 S.W.3d 405, 416-17 (Tex. App.—Waco 2008, pet. ref'd).

The judgment is affirmed.

                                          FELIPE REYNA
                                          Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Affirmed
Opinion delivered and filed July 28, 2010
Do not publish
[CR25]