# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HELEN TYNE MAYFIELD and | § | |
| JAMES CAMPBELL, an individual | § | |
| Plaintiffs, | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO._____ |
| | § | |
| CITY OF COLLEGE STATION, | § | |
| CITY OF BRYAN, BRAZOS COUNTY, | § | |
| LT. JAMES ARNOLD, individually | § | |
| and in his official capacity, ( JANE | § | |
| DOE, an individual, ANGEL | § | |
| MARTINEZ, an individual, THE FEDERAL | § | |
| BUREAU OF INVESTIGATION,  MICHEAL | § | |
| COULTER, an individual, JAMES | § | |
| NAPOLITANO, an individual, TRUMAN | § | |
| BODY, an individual, THE SECRET | § | |
| SERVICE DEPARTMENT, an agency of | § | |
| The United States of America, unnamed | § | |
| Defendants), Individually, Jointly and | § | |
| Severally liable.            Defendants | § | |

**PLAINTIFF'S MOTION FOR TEMPORARY INUUNCTION, ORIGINAL PETITION AND JURY DEMAND**

NOW COMES Plaintiffs HELEN TYNE MAYFIELD, an *former* attorney and her son JAMES CAMPBELL,

who make this motion for an Injunction and original complaint of violation of her Civil Rights

and that of her son by Defendants, the City of College Station and the City of Bryan, and Brazos

County and the College Station and Bryan Police Department and the combined action of the

FBI and Secret Service. Plaintiffs allege:

1

## INTRODUCTION

1. This Complaint describes how HELEN TYNE MAYFIELD, an attorney and her son JAMES CAMPBELL, were singled out by the government and the City of College Station and Bryan, Texas and Brazos County to be accused of terrorism and an alleged connection to BRANDON MAYFIELD, forgery of a financial instrument and the Madrid bombing. Also based on the fact that one of Mayfield's clients borrowed money from a person with a Muslim name and wired the funds to HELEN MAYFIELD, his attorney. This Complaint also describes how the FBI and SECRET SERVICE,UNNAMED DEFENDANTS, for their own institutional reasons, and for the personal reasons of its employees described MAYFIELD to the National and International Media as an international money launderer, terrorist and counterfeiter/forger, and subjected her to incarceration for over two years as a forger, accused her of being part of a 419 money scam and employee of international "scammers", and terrorists, a national security threat. She was incarcerated for two years and six and a half months for forgery and subjected to execution if charged as promised by the SECRET SERVICE. This Complaint also challenges the constitutionality of portions of the Patriot Act. The City of College Station, City of Bryan, Brazos County and the Police Departments of those two respective Cities were part of the TASK FORCE that engaged in the warrantless searches and arrest of fifty four counts of forgery of a financial instrument for MAYFIELD'S participation in this protected activity of "back order payment representative" authorized by the IRS tax code 515,519, 901 and the

North American Trade Agreement and the Good and Friendly Treaty signed by the United States government.

## PARTIES

1. HELEN MAYFIED, her son, JAMES CAMPBELL, are United States citizens, living in Houston, Texas and Bryan, Texas respectively. At the time of the arrest, they resided in College Station, Texas.

2.    2. Lt. James Arnold resides in the Bryan/College Station area and is employed by the College Station Police. The City of College Station is a municipality organized under the laws of the State of Texas and may be served with process at

3. ERIC HOLDER is the Attorney General of the United States of America, JOHN ASHCROFT, was the Attorney General of the United States at the time of MAYFIELD's arrest, responsible for the actions of the Department, and responsible for the actions of the Federal Bureau of Investigations and the Secret

3

Service. BETH DOE and ANGEL MARTINEZ are employees of the FBI. TRUMAN

BODY and AGENT NAPOLITANO are members of THE SECRET SERVICE.

4. At the times pertinent, JOHN and JANE DOES I-X were employees and/or

agents of the FBI and/or the DEPARTMENT of JUSTICE.

5. The DEPARTMENT OF JUSTICE, (hereinafter DOJ) and the FEDERAL

BUREAU OF INVESTIGATION (hereinafter FBI) and agencies of the United States

Government as defined in the U.S. Privacy Act. The DEPARTMENT OF SECRET

SERVICE (hereinafter the Secret Service) is also so defined.

## JURISDICTION

6. This Court has jurisdiction of these claims pursuant to 28 U.S.C. 1331, 28

U.S.C. 1343(a)(3), 5 U.S.C. 552 (a)(g), 28 U.S.C. 2201, 18 U.S.C. 241 and 18 U.S.C.

242. Jurisdiction is proper pursuant to 28 U.S.C.A., Section 1443(4) which states:

> The District Court shall have original jurisdiction of any civil action
> Authorized by law to be commenced by any person to recover
> Damages or to secure equitable or other relief under any act of
> Congress providing for the protection of civil rights , including the
> right to vote.

This Court also has supplemental jurisdiction pursuant to 28 U.S.C.A. Section 1367

to hear the state claims that will be set forth in this complaint. Venue is proper in

4

the Southern District of Texas, Houston Division, as this is the district where the

claim arose in accordance to 29 U.S.C. Section 1391(b).

## FACTUAL ALLEGATIONS

7. On August 10, 2007, MAYFIELD'S home was searched. The warrant stated that

Mayfield had information about a "Nigerian scam." The scam has never been

disclosed at any time by the prosecutor or FBI. The police officer responsible for

executing the search Lt. James Arnold stated at the time that the basis of the

search was a SUSPICIOUS ACTIVITY REPORT (SAR), given to him by the FBI. The

report admitted into evidence at the Writ of Habeas Corpus to lower the bond

was a forged document and was unsigned. The SAR report that was admitted into

the record was an amended report and was a forgery and was unsigned.

8. Prior to her arrest, MAYFIELD had had a conviction for a Twelve ($12.00)

Dollar check on uncollected funds in 1968 for which she received a full pardon

from the governor. She had been a licensed social worker since 1979 and a

licensed attorney since 2/2000 in Texas. She had no prior felony or misdemeanor

convictions. MAYFIELD WAS 59 years old at the time.

MAYFIELD agreed to pay the amount of the checks Five Thousand Eight Hundred

($5, 800.00) Dollars (the bank had recovered Two Hundred ($200.00) Dollars from

5

her account, and Two Thousand Five Hundred ($2,500.00) Dollars in attorney fees. The Board of Directors rejected this offer and refused to sign a release from all civil and criminal liability even if MAYFIELD paid in full plus attorney fees. MAYFIELD then informed them that she wished to proceed with her counterclaims of breach of contract, negligence, and intentional infliction of emotional distress. The case was in District Court 272 at the time and was a civil matter. The bank was suing for its funds.

9. The Bank then filed criminal charges per the police officer Lt. Arnold who arrested her without a warrant for the twelve checks. Prior to this arrest, MAYFIELD had never cashed a counterfeit check anywhere in the universe except these twelve (12) checks sent to her by this client. (MAYFIELD cashed two of the checks herself and used her own funds to wire the money to her client). She then used one of the checks at College Station Utilities and when informed the check was not good, paid the check in full plus the check fee. She continued to be reassured by her bank at that time that the checks were still good. It was not until a month or so later that the bank changed its position. To date, American Express reports the checks have never been presented for payment by anyone.

9. Prior to the search of MAYFIELD's home, she and her son resided in

College Station for one year and she had recently moved to Houston. Her son

graduated from St. Mary's Preparatory School, Detroit, Michigan and the

University of Michigan. MAYFIELD attended the University of Texas at Austin,

Wayne State University, the University of Houston, and she had traveled to Cuba

as a People to People Ambassador, spent time in Canada almost weekly as well as

her son, traveled to England, Sweden, Spain, Amsterdam and all parts of the

United States. In 1997, MAYFIELD owned a time share that allowed her to spend

at least two weeks at a Villa in the South of France. MAYFIELD and all her sisters

own time shares and vacationed together every two years prior to this incident.

11. The prosecutors stated to the court that the reason MAYFIELD was

being arrested was partly because of her travel to Canada and other foreign

countries based on her race and sex. (Black people were not supposed to be

doing this kind of travel to foreign countries for any reason). The prosecutors and

the Court of Appeals stated that the only reason a Black person would be doing

this type of travel would be to commit crimes. International travel is not

permitted for Black persons.

12. FAY MILLER, one of MAYFIELD'S clients told MAYFIELD that the

prosecutors talked to her personally and the FBI and SECRET SERVICE agent asked

her what she thought Mayfield was doing and informed her that it was illegal for MAYFIELD to know and wire money to people in Nigeria and foreign countries. She should not be representing foreigners and practicing International Law.

13. No one at any time asked MAYFIELD about the reason for her wires to foreign countries, the source of the funds for the wires or to whom the wires were sent to. MAYFIELD had never discussed checks with anyone other than the fourteen checks that she tried repeatedly to make a police report about at the request of the bank.

14. On the day of the search of MAYFIELD'S home, Lt. James Arnold of Brazos County assured MAYFIELD that the FBI had given him copies of her bank records and a suspicious activity report from Wood Forest Bank regarding wires from her California client who had no connection to this case. In fact, that California client had wired loan proceeds to MAYFIELD. The funds were not related to any criminal activity of any kind. The California client had no connection to the Sierra Leone client who had sent the fourteen checks. In fact, in sworn testimony on the record, Lt. Arnold admitted that there had been no complaints about the source of MAYFIELD'S funds by anyone and there had been no complaints about her California client who had wired her the funds or any

complaints about the source of the funds that the client had wired to her. There was no criminal activity of any kind known by the police regarding these funds.

15. The FBI had apparently issued a National Security letter to obtain the records of MAYFIELD without a court order as required by banking privacy statutes and passed the records to local police.

16. At some time before the search of MAYFIELD's home, based on information and belief, the FBI made application to the Foreign Intelligence Security Court (FICS) for an order authorizing the FBI to:

    a. Place electronic listening decides ("bugs") in the shared and intimate rooms of the Mayfield home;

    b. Execute repeated "sneak and peak" searches of the Mayfield family home occurring when the family was away from the home, which to add insult to injury were performed so incompetently that the FBI left traces of their searches behind, causing the Mayfield family to become frightened and believe they were being burglarized. MAYFIELD filed a complaint with the police.

    c. Obtain private and protected information about the Mayfield's from third parties and from her personal records and Documents.

    d. Execute "sneak and peek" searches of the law offices of
HELEN MAYFIELD and place wiretaps on Mayfield's office, home
and cell phones.

17. The application for the Foreign Intelligence Surveillance Act (FISA) order
before the FISA was personally approved by JOHN ASHCROFT, the Attorney
General of the United States. As a result, the Attorney General of the United
States and its agents, acting with the Brazos County police as part of a federal task
force knowingly and recklessly filed false and misleading affidavits with the FISA
and Brazos County Courts and Court of Appeals which MAYFIELD was never
allowed to read or see but were referred to in a recent Court of Appeals decision.

18. Employees of the FBI and Brazos County police concocted false and
misleading affidavits in order to justify even more intrusive searches and in order
to justify the arrest of MAYFIELD as a "counterfeiter/forger". MAYFIELD had
been kept under surveillance for over seven (7) months by authorities of the
federal government. MAYFIELD sued the Eagle Newspaper and KTBX Television
for defamation and they produced fraudulent and perjured documents that they

indicated were filed and sworn affidavits that they received from the clerk of the

Court in Brazos County constituting probable cause for "something". The

document did not have search or arrest on it. The signer was a Justice of the

Peace Boyette who has no authority under the Texas Constitution for felonies

who set the bail for the fifty four counts of forgery at $20,000.00 per count. All of

the documents for the forty two counts were obtained by warrantless searches

and the files were protected by attorney client privilege and no warrant was

issued for her legal documents and files. The police also searched MAYFIELD'S car

without a warrant and seized her client files and concealed the files and

purported to the court that the documents were counterfeit when they were not

and admitted the retainer in a divorce as an extraneous offense. MAYFIELD  was

a licensed attorney and Social Worker. She was legally entitled to receive a

retainer fee.

The local police with the assistance of the prosecutor  concocted

affidavits which at no time were presented to MAYFIELD or her attorneys as

MAYFIELD represented herself.  Based on the concocted, false, and misleading

affidavits,  broad search warrant was sought and search warrants were sought

and issued but were not executed or left at the premises. MAYFIELD was held in

a "no bond" situation in Brazos county as the amount of the bond for Five

Thousand Eight Hundred ($5,800.00) Dollars was Two Hundred Thousand

($240,000.000 Dollars.) MAYFIELD was also arrested for the checks in her home

that were over Ninety (90) days old and had been turned into the Fraud

Department of American Express. The amount of that bond was Eight Hundred

Ninety Thousand ($890,000.00) Dollars, totaling One million and eighty thousand

($1, 080, 000.00) Dollars. Leaks to the Media by the FBI and local police and

prosecutor led to National headlines and postings on the Texas State Bar

indicating MAYFIELD had been identified as a counterfeiter, she had admitted

cashing checks since 2001. In point of fact, Mayfield STARTED THE "Back Order

payment representation business in March, 2007 and never cashed a single

check in that business. Not a single check left her home or office where her

client files were protected by attorney client privilege. The police seized the

checks without a warrant for her client files. The state judge and Court of

Appeals ruled that MAYFIELD, a licensed attorney (perhaps because she was

black) could not claim attorney privilege in her legal files and did not give a

reason.

19. MAYFIELD was frightened humiliated and outraged. While in custody

she feared for her life and was assaulted by prisoners who believed she was a spy.

Her life was virtually stolen from her as all of her personal, business and client

files and records and receipts were seized. Records and receipts from her

condominium purchased in 1997 in Greenspring, Virginia, all of her client

contracts and payments from those clients; all of her credit cards from 1968 to

2008 and those records and her mortgage records and receipts, tax records and

receipts from 1968 to 2008 were seized. The police admitted in sworn testimony

on the record to warrantless searches before and after the warrant. JAMES

CAMPBELL'S apartment was searched without a warrant and property seized by

the police.

Lt. Arnold told Mayfield the reason for the search was that they were

conducting an investigation and believed she had information about "Nigerian

Scams", not a crime per the penal code.

19.    Without ever showing MAYFIELD an arrest warrant or even

producing one or a probable cause for the arrest, MAYFIELD was kept in jail for

four months and a Two Hundred Ninety Thousand ($290,000.00) Dollars bond for

having the client payments in her files. After the trial, the charges were

dismissed for the forty two counts without notifying MAYFIELD until two years

after they were initiated. MAYFIELD was legally entitled to be a "back order

payment representative." As such her client files were protected by attorney

client privilege and as the IRS Code was the authority for her actions, the Federal preemption in doctrine applied. Additionally the practice was authorized by federal treaty, the Good and Friendly Treaty and the North American Free Trade Agreement, Tax Code 515,901, 505.

The trial court and the Court of Appeals ruled that it was not going to apply the Texas Rules of Evidence, Criminal Code of Procedure, and the Texas and United States Constitution with respect to MAYFIELD. They did not give a reason for this decision to suspend all laws and the United States and Texas Constitution in her case.

20. This lawsuit seeks compensatory and punitive damages from the City of College Station, Bryan, Texas and Brazos County (This was a joint Task Force but no federal charges were filed as threatened by the SECRET SERVICE) who knowingly and recklessly misled the Foreign Intelligence Security Court in Washington, D.C. and the District Court in Bryan, Texas in order to justify intrusive and comprehensive electronic and physical surveillance and searches. MAYFIELD'S life was threatened. She was assaulted and injured and her son's safety was at risk as he had a close head injury and was unable to work and care for himself prior to the accident. He was traumatized and confused by the search and seizure of his property from the family condominium.

14

21. MAYFIELD'S cash was seized, her bank accounts were blocked, her silver collection was seized as well as all of her receivable to bill for her court appointed work.

22. MAYFIELD's tax and business records were seized from 1970 to 2008. All of her receipts on her home purchased in Michigan and her condominium in Virginia were seized by the police, FBI and Secret Service.

23. MAYFIELD had lived with her son in Detroit, Michigan from 1974 to January 2002. During that time, she had been an adjunct Professor, field instructor at several universities (U of Detroit, Wayne State U. and University of Michigan, Marriage Counselor/Family Therapist and a Board Certified Psychiatric Screener for Adults and Children. She worked in many emergency rooms in Michigan and for a private agency. She had no history of engaging in any type of criminal activity of any kind or receiving directly any funds from any client except her private clients whose insurance was billed.

24. For several reasons, the FBI and local police after seven months were in a bind. They continued and escalated their secret searches of MAYFIELD's home, office and car.

25. Lt. Arnold and Judge Smith highlighted that the police were working with the FBI with the federal Task Force and the FBI in particular at the MAYFIELD bond reduction hearing.

26. MAYFIELD went to the Justice Department upon release on bond and was told that they could not help her and that they only took referrals from agencies and not individuals.

27. The FBI, "BETH DOE" in the Brazos County FBI office told MAYFIELD that she had many of MAYFIELD'S client documents and files and wanted to talk with her about them. She did not state how she obtained her client files. It would appear from the documents cited that they were also referring to some "spam" that everyone gets on the internet and nobody believes or takes seriously.

28. Unknown to MAYFIELD the government, Brazos County prosecutors had seized MAYFIELD's Western Union and Money Gram records and E- Mail records and concealed those files and e-mails during the trial in order to secure a conviction when they knew the files would exculpate her from any crime or forgery for the checks mailed to MAYFIELD for her international clients from alleged customers in America.

29. MIKE COULTER, a Secret Service in Houston, was contacted and he denied Secret Service involvement. TRUMAN BODY, Secret Service, was subpoened and he contradicted MIKE COULTER and stated THE SECRET SERVICE was involved and that he had personally been part of the Task Force investigating MAYFIELD. In fact after MAYFIELD told FAY MILLER that the FBI, Secret Service and TSA had denied involvement in her case, FAY MILLER told her that they were lying. She had MAYFIELD come to her home and presented her with cards and sell phone numbers of FBI and Secret Service officers including TRUMAN BODY. She stated that they "FBI and Secret Service" had come to her home and asked her what she thought "MAYFIELD might be doing." She reported that she told them about Wood Forest Bank and she had agreed to help Harold Thomas "hatch up some scheme to get MAYFIELD in trouble. These three clients told MAYFIELD that the State Bar of Texas had told them that Mayfield could not charge them for her legal services and that she had to represent them for free. They did not state why the State Bar told them this. Another client testified in court that she did not believe that Mayfield was an attorney because the State Bar of Texas had removed her information and placed notice that Mayfield had been identified as a counterfeiter. The website did not disclose who had identified MAYFIELD as a counterfeiter.

30. FAY MILLER repeated that the authorities had told her that it was illegal to represent foreigners and to have "Muslim" clients.

31. In summary, the police, FBI and Secret Service were subjecting MAYFIELD and her son to public branding as a forger, money launder and international terrorist and threatened per the Secret Service Napolitano to subject her to further charges an ultimately the penalty of death as a terrorist an order to save their reputations, their jobs and to eliminate MAYFIELD as a credible person to testify as to what they were doing.

32, MAYFIELD now believes that the "DHL" attorney who encouraged MAYFIELD to participate in the 'Back Order Payment business" was a Secret Service or FBI agent.

33. The Secret Service and FBI remained undaunted. That MAYFIELD was a Black woman who took international trips and represented foreigners was a driving force behind the continuing investigation. The FBI and Secret Service continued to use the powers of the secrecy of the Patriot Act and FISA to perform electronic surveillance, including wiretaps and "sneak and peek" physical searches of HELEN MAYFIELD's home, law office, vehicles and communications. Lt. Arnold told MAYFIELD that he got all his bank information from the FBI. MAYFIELD's

neighbors report that cars were always located near the trash bind that were surveilling or monitoring someone. They also report, file cabinets and boxes and bags of files being removed from MAYFIELD's home when she was not present.

34. Lt. Arnold testified that there were no criminal links ever found nor had any been reported about the income of MAYFIELD from 1968 to 2007. However, the FBI and local police continue to hold all MAYFIELD's taxes and business records which have no criminal links of any kind to any crime.

35. Employees of the FBI and the DOJ and the College Station police concocted false and misleading affidavits in order to justify even move intrusive searches and in order to justify the arrest and to secure a conviction for MAYFIELD for forgery charges – Agent Napolitano of the Secret Service testified that MAYFIELD "talked" the language of a scammer by "quoting the IRS Code." He testified that the grand jury in Detroit would be convening a secret grand jury to indict MAYFIELD of 1029 access and other federal crimes as soon as possible.

36. A fraudulent 1099 was filed by 'HEB' for HELEN MAYFIELD. HELEN MAYFIELD has never received so much as $1.00 from HEB of any kind. There is reason to believe that the IRS was involved and MAYFIELD'S records were passed to the IRS as she has repeatedly been given false information by IRS and has not

been paid the $12,000.00 plus interest that she is owed for taxes filed timely that were never paid.

37. The 10th Court of Appeals reported that affidavits were filed in court that purport to indicate that MAYFIELD admitted she had been cashing checks for several years that were counterfeit. This was totally false and fraudulent information that was allegedly submitted to the court of appeals in some type of expate contact between the prosecutor and the Court of Appeals who ruled that MAYFIELD, despite the court's using this affidavit, MAYFIELD, the lead attorney in her case, could not read or see this affidavit and did not have to be given a copy of any exhibits or documents filed in her case and used against her to support the jury verdict. The court cited sworn testimony of the Secret Service that was different then the testimony given in the trial.

38. The sole purpose of the false reports of admissions by MAYFIELD leaked to the press and concocted affidavits was to demonize MAYFIELD and create an aura of probable cause that MAYFIELD was money laundering as an international scammer, terrorist when in fact the defendants had no evidence of any kind to support this conclusion and Lt. Arnold testified that no such evidence existed to his knowledge. The accusations of global scams was merely careless

speculation and prejudice with the intent to taint the jury pool to secure a conviction.

39. In addition, the concocted affidavits attempted to validate their focusing on MAYFIELD's race and sex and her association with Muslims and foreigners when they knew that her associations were legal and a part of her regular law practice.

40. The concocted affidavits submitted to the court were altered frequently with MAYFIELD being denied to see or read the copy of her "alleged admissions." The 10th Court of Appeals without stating a legal basis for its ruling ruled that MAYFIELD could not see a copy of the affidavits filed in her case to support the warrants issued. Moreover, the 10th Court of Appeals ruled that the state could modify the search warrants without giving MAYFIELD a copy of any of the affidavits or warrants and this nondisclosure did not violate any of her constitutional rights. The Texas Supreme Court refused to review those rulings. The court ruled that MAYFIELD should have known that dealing with these foreign clients was "bad". The court did not cite what was "bad" other than to say that MAYFIELD citing the IRS language of the tax code was "the talk of a scammer per the Secret Service Agent Napolitano. The IRS Code was cited as a criminal code or

document that MAYFIELD should have known was "bad" per the court. The 10th Court of Appeals failed to cite that every citizen must pay income taxes and obey the IRS tax code.

41. MAYFIELD was indicted and held in jail for four months before bail and six and a half months of house arrest before the forty two charges of forgery of a financial instrument were dismissed.

42. Brazos County prosecutors stated there were no records of the indictment, no booking tape, affidavits or testimony of any kind of the indictment. They failed to disclose to the public that the records seized without a warrant were protected by attorney-client privilege and social work privilege. They also failed to disclose that the documents were seized from MAYFIELD's home and she was legally entitled to possess the payments. As a licensed attorney the privilege belonged to her clients and she had no duty to disclose the content of her files to anyone. In other words there was no crime being committed. Moreover, the prosecutor failed to disclose to the jury that the numbers on the gift checks had already been turned into American Express and verified as not good checks. The checks had been seized in a warrantless search from sealed envelops in her files and under her mattress by the police. The clients in both cases had been notified

and the e-mail files which the prosecutors and federal officers concealed during

the trial would have verified this fact. This notification had taken place more

than three months before the seizure and no one could cash these checks at the

time of the seizure. MAYFIELD had given the numbers of the checks and money

grams to their respective fraud units.

43. The concocted and false affidavit submitted to the District Court in

Houston and the Brazos County Grand Jury was knowingly and/or recklessly false

and misleading in the following particulars:

> A. It implied that borrowing money and wiring it was a
>
>    criminal offense.
>
> B. It made false and defamatory statements that MAYFIELD
>    Admitted she had been cashing counterfeit checks since 2001.
>
>    It made false statements that MAYFIELD admitted that she
>    had participated in five or more scams made no such statements
>    to anyone and had conducted no scam on anyone. The document
>    itself was a forgery and did not cite whether it was an arrest or
>    search warrant and was signed by a Justice of the Peace who has no
>    authority for felonies in Texas. Lt. Arnold committed perjury on the
>    document and it was concealed from MAYFIELD by the trial judge,
>    the 10[th] Court of Appeals and the Texas Supreme Court.

44. Preparing and filing the concocted affidavits with the omissions and

false statements as set forth above constituted a violation of HELEN MAYFIELD's

clearly established constitutional rights. No reasonable law enforcement officer

could have reasonably believe that preparing and filing a false and misleading affidavit for the purpose of securing a search and arrest warrants did not violate clearly established constitutional rights. The fact that the trial judge and the Court of Appeals ruled that MAYFIELD should not be allowed to see the affidavits and warrants indicates they knew they were false.

45. Based on the concocted false, and misleading affidavits, broad search warrants were sought and issued. MAYFIELD was only given one copy of a warrant without a probable cause and inventory with six items. MAYFIELD's home, office and car were searched without any warrants for the searches ever presented to MAYFIELD. MAYFIELD had two computers, fax machines, copy machines and printers seized from her home and office. All of MAYFIELD's tax records and receipts from 1970 to 2007 were seized, all of her legal files from 1987 to 2007 were seized. Four Thousand One Hundred ($4,100.00) Dollars cashiers check on Comerica Bank, receivables from legal work, my silver collection were seized. Other "secret" searches and seizures were conducted in 2008 of MAYFIELD's son's JAMES CAMPBELL'S apartment in Bryan. Based on concocted, false and misleading affidavits, MAYFIELD was arrested and kept in Brazos County Jail for four and a half months initially then transferred after conviction to Plain State Jail.

24

46.  After the trial, the state continued with false and misleading and criminal behavior.  For example, the prosecutor repeatedly committed perjury by stating that the only exhibits in the case were counterfeit documents.  This was not true.  The retainer in a divorce, the contract and file were seized and presented as forged documents when they were not.  All of MAYFIELD's credit cards were seized from 1968 to 2007.  Her credit cards and gas card obtained since 1968 were seized including her Neiman Marcus credit card obtained in 1973. None of MAYFIELD's personal or client property has been returned.  MAYFIELD's son's property was also seized and has not been returned.  All her legal forms for civil and criminal cases, all her bankruptcy files, all her personal receipts for her income tax filings were seized and have not been returned.  There has never been any conviction or charges filed based on these seized records nor any criminal activity of any kind associated with these files.  The names, addresses and telephone numbers of all of MAYFIELD's clients were seized and have not been returned.

47.  Preparing and filing the concocted affidavits with the false statements and omissions as set forth previously constituted a violation of MAYFIELD's clearly established constitutional rights.  No reasonable law enforcement officer could reasonably believe that preparing and filing a false and misleading affidavit for the

25

purpose of securing search, arrest warrants and a conviction did not violate clearly established constitutional rights.

48. Based on the concocted, false and misleading affidavits, broad search warrants were sought and issued. The warrants were concealed from MAYFIELD and during the trial, the prosecutor alleged that they did not exist and MAYFIELD was not entitled to see them. Then the Court of Appeals ruled and cited the "nonexistent" affidavit as a part of the basis for affirming the decision below. Interestingly enough, the Court of Appeals ruled that MAYFIELD was not entitled to see the affidavits or warrants which denied her right of conformation allowed by the Sixth Amendment. Moreover, the MAYFIELD family home, law office and car were repeatedly searched without warrant that included probable cause. All computers, paper files, actual client files and all client contracts were seized with all legal forms for civil and criminal cases, all bank records since 1970. Based on the concocted, false and misleading affidavits, HELEN MAYFIELD was arrested without a warrant for forgery of a financial instrument for 42 counts of forgery and held in jail and on bond for these offenses for over three years until MAYFIELD was told they were dismissed in February, 2010. Leaks to the media from the FBI and local police and prosecutors led to headlines of MAYFIELD being involved in global scams and cashing checks since 2001. All these statements

were knowingly false. They knew there was no illegality in MAYFIELD's conduct.

MAYFIELD during the trial was told by the prosecutor that anyone with the

internet was a criminal and to have the internet meant one had the intention to

commit a crime. You are legally responsible for any spam that you do not prevent

coming over the internet. MAYFIELD being 59 and almost computer illiterate was

blamed for all computer crimes anyone may choose to commit. She was not

charged with computer crimes by the State or Federal Government. The Secret

Service agent testified that attorney-client privilege did not apply to MAYFIELD

and her files. She had a duty to turn all her client's customers in to the police.

The Court of Appeals opinion called all of her international clients her legal clients

"scammers." MAYFIELD was not allowed to see or read the sworn affidavit that

the court of appeals cited in their opinion. MAYFIELD knew that she was innocent

of any forgery charges for the 42 counts of forgery that she had been indicted for.

She had only received payments in the mail for her clients and had done nothing

with the payments except verify that they were not good, notifying her clients

that she could not mail them their payment because the payments were not good

and may be counterfeit. Therefore, she could not risk trying to cash them since

the financial agencies did not verify them as good by phone. Moreover, the

numbers to the checks in question had been turned in to the agency at the time

of the call. Money gram had not been able to find any proof that it had sold the money grams in question. They returned the money grams to MAYFIELD and did not put void across the front of the money grams and the 36 traveler checks MAYFIELD was indicted for were almost six months old and also turned into American Express. If they had done so, the State would not have been able to enter MAYFIELD's home and charge her with forgery for possession of the money grams in question. Yet the grand jury and the jury believed that MAYFIELD could possess the money grams and travelers checks with intent to defraud after she had turned all the numbers on the money grams and American Express and been told the checks were not good. Money gram examined the checks in two different stores and did not allege they were counterfeit. They reported they could not find any proof the money grams had been purchased by them. MAYFIELD was arrested, held in Brazos County Jail where she was physically assaulted, terrorized, her privacy and home were violated over and over again without a warrant. She was evicted and lost all her worldly possessions. She was fearful for her son who had been injured with a closed head injury and was unable to care for himself as the task force seized all of MAYFIELD's cash and receivables and her silver collection. None of her property has been returned to

her even though it was not purchased from or used in any type of criminal activity

and the sworn testimony of Lt. Arnold so verified this fact during the trial.

49. In 8/2008, the Secret Service reported to the jury that their intent to

convene a "secret grand jury" to indict MAYFIELD in federal court for taxes, 1029

access and other charges. To date no charges have been filed by the federal

government and her property has not been returned.

50. An FBI agent who identified herself as "BETH DOE" and refused to give

a real name reported that she had a lot of copies of documents from MAYFIELD's

legal files. She readily admitted that they had not been properly or legally

obtained. MAYFIELD agreed to meet with her to view the files and answer

questions but this meeting never took place. Fully aware they had not conducted

themselves properly, the employees of Brazos County, the FBI and Secret Service

began to make sure MAYFIELD was convicted and the conviction would be

affirmed. The record was sanitized of MAYFIELD's objections which were

removed to deny appellate review. The exhibits were altered and some removed,

MAYFIELD's motions were removed. The files/records were altered to deny

MAYFIELD her constitutional right of appellate review. The county refused to

provide MAYFIELD with a copy of the appellate record for appeal that was sent to

the 10th Court of Appeals. Evidence had been tampered with and altered by the

Task Force before and after the trial. E-mails were created and concealed by the

prosecutor and the government from MAYFIELD. All the telephone numbers and

files of her international clients were seized and concealed so that MAYFIELD

would be unable to contact them for support.

51. In February, 2010, the state notified MAYFIELD that it had dismissed

the charges for the 42 counts of forgery of a financial instrument in which the

only element listed on the indictment was "possession". The cases were

"allegedly dismissed because of the conviction. During the trial Lt. Arnold had

testified that to his knowledge there was no rule, statute, law or code that would

prevent MAYFIELD from participating as a "back order representative." This was a

lawful activity that she had been arrested for and held in jail for over four months.

Moreover, the conviction is still being appealed at the Habeas level as a Habeas

has been filed with the U.S. District Court. The dispute of material, major

tampering and altering of the court record and coaching witnesses to commit

perjury and witness tampering is significant and denied MAYFIELD appellate

review and violates her constitutional rights.

52. This lawsuit seeks her client record and files from the FBI, DOJ, and compensatory and from punitive damages Brazos County, who knowingly and/or recklessly misled the Foreign Intelligence Security Court in Washington, D.C. and the United States District Court, the Brazos County Judge and Grand Jury in order to justify intrusive and comprehensive electronic and physical surveillance and searches of MAYFIELD's family home, law office, vehicles and communications and in order to arrest and convict MAYFIELD of forgery. This lawsuit seeks compensatory damages from the City of College Station  and Brazos County arising from the actions taken by their employees to invade MAYFIELD's privacy and ruin her reputation by leaking to the world news media that HELEN MAYFIELD was connected to Brandon Mayfield and the Madrid bombing via the internet and to "international/global scams and admitted she had been cashing checks "engaging in criminal acts since 2001 which was totally false and defamatory.  This lawsuit seeks to affirm that not even a "War on Terror" allows the federal government and local municipalities to deprive U.S. citizens of their constitutionally protected rights of due process, liberty and to enjoy the privacy and security of their homes and offices.  The Task Force and Brazos County caused the State to keep MAYFIELD six plus months over her two year sentence because they refused to schedule her motions  non pro tunc to reform the judgment to

include her house arrest even after the Court of Appeals wrote the Judge and

informed him of the problem. Thus, MAYFIELD was falsely imprisoned for almost

a year in which there were no charges pending and her sentence had been

served.

## FIRST CLAIM OF RELIEF

**Bivens Claim for HELEN MAYFIELD For False Imprisonment and**

**Malicious Prosecution for being incarcerated for seven months
beyond the maximum sentence of two years for forgery of a financial
instrument and refusing to correct the judgment.**

53.     Plaintiff, HELEN MAYFIELD realleages and incorporates herein

Paragraphs 1-52, above.

54.     Defendants, Lt. ARNOLD, ( unnamed defendants TRUMAN BODY,

MIKE COULTER, BETH DOE, JOHN AND JANE DOES, 1-X, JIM LOTT, ANGEL

MARTINEZ, acting individually and in concert, knowingly and/or recklessly caused

a false and misleading search warrant to be issued and false affidavit to be filed

in Brazos County for a search warrant in the counts of forgery of a financial

instrument and in Brazos County for "information about a Nigerian scam" which

is not a crime in the Texas Penal Code. MAYFIELD was arrested and kept in jail

for four months and on bond for two years on these charges which were not a

crime in Texas due to the Preemption Doctrine. This search of her home, office and car without probable cause or concocted probable cause and arrest for documents in her client files that were privileged was a violation of MAYFIELD's rights under the Fourth Amendment of the United States Constitution to be secure in her person, and not be arrested or imprisoned without probable cause. Defendants, LT ARNOLD, TRUMAN BODY, MIKE COULTER, BETH DOE, JOHN AND JANE DOES 1-X, JIM LOTT, ANGEL MARTINEZ, acting individually and in concert, knowingly and wrongfully selected HELEN MAYFIELD for arrest and imprisonment based on her race and sex.  The prosecutor told MAYFIELD's attorney "**she had been a crook all her life but no one had proven it.  "She is Black isn't she?"** These actions by defendants violated HELEN MAYFIELD's Fifth Amendment right to be free from selective and discriminatory arrest and imprisonment.

55. Defendants misuse of the search warrant violated MAYFIELD's Fourth Amendment right to be secure in her person, and not be arrested or imprisoned without probable cause.

56.  HELEN MAYFIELD's arrest and imprisonment caused her to suffer and endure four (4) months of false imprisonment and an additional seven (7) months of false imprisonment with no charges pending against her with the judge and Brazos county refusing to reform their judgment conduct an examining trial prior to indictment or produce any type of evidence that the indictment was legally/lawfully obtained.  She was arrested without a warrant or probable cause and her home was searched in multiple warrantless searches to obtain probable cause per the sworn

testimony of Lt. James Arnold and Judge Stephen Smith of the 361 st District Court. MAYFIELD endured and continues to endure extreme mental anguish and humiliation, embarrassment, damage to her general reputation as a lawyer and an impairment of her earning capacity, all of her special and general damage in an amount to be determined at trial.

57. Defendants' intentional and reckless misconduct, as set forth above, entitle HELEN MAYFIELD to punitive damages from said defendants in an amount to be determined at trial.

<u>SECOND CLAIM FOR RELIEF</u>

**Deprivation of Familial Rights Claim For James Campbell**

58. Plaintiff JAMES CAMPBELL re-alleges   and incorporates herein Paragraphs 1-57 above.

59. During the time when HELEN MAYFIELD was imprisoned, JAMES CAMPBELL was deprived of his constitutionally guaranteed right to be with his mother, and was denied his familial companionship, love, and society, all to his general damage in an amount to be determined at trial.

60. Defendants intentional and/or reckless misconduct, as set forth above, entitle JAMES CAMPBELL to punitive damages from said defendants in an amount to be determined at trial

<u>THIRD CLAIM FOR RELIEF</u>

**Bivens Claim for HELEN MAYFIELD and JAMES**
**CAMPBELL Arising From Unlawful Searches and**
**Seizures.**

61. Plaintiffs HELEN MAYFIELD and JAMES CAMPBELL reallege and incorporates  herein Paragraphs 1-60 above

34

62. Defendants Lt. Arnold, the City of College Station, The City of Bryan and Brazos County , Texas and unnamed co-defendants COULTER, MARTINEZ, LT. JAMES ARNOLD, JOHN AND JANE DOES 1-X, acting individually and in concert, knowingly and/or recklessly caused false and misleading search warrant affidavits to be filed in Brazos County and U.S. District Court in the Southern District in Houston, Texas, and Secret Service Agent NAPOLITANO testified in court that they would be convening a secret grand jury or had convened a secret grand jury to bring charges against MAYFIELD. On information and belief, plaintiffs allege that the defendants also caused false and misleading search warrant affidavits to be filed in FISC in Washington, D.C.

63. As a direct result of said defendants intentional and/or reckless submission of false and misleading affidavits to US Courts, HELEN MAYFIELD and her family were subjected to broad and intrusive physical and electronic searches of her family home, law office, bank records, vehicles in violation of HELEN MAYFIELD's rights under the Fourth Amendment of the United States Constitution to be secure in her home, law office, communications and vehicles from unreasonable searches.

64. Despite requests by MAYFIELD and her attorney for the return of her legal files, bank records, e-mail files, tax records from 1968 to 2008, business records from 1970 to 2008, her silver collections, telephone records, computer and paper client files, her two computers, all credit and bank cards from 1968 to 2008, two fax machines, two printers, all of her receivables and JAMES CAMPBELL's tax records from Michigan, civil and criminal legal forms, and seven zip drives, all of her bankruptcy, her passport and bank books including her bank book to Poplar Bank and other personal records and files. The DOJ, FBI, Brazos County and College Station Police have not returned the above to plaintiffs. The Brazos County Judge has refused to hear MAYFIELD's Motions requesting the return of her property and her clients property and further invaded MAYFIELD's privacy and the privacy of her clients and family, when the wrongfully seized materials became known, were report to the media and used as exhibits in

MAYFIELD's trial in **violation of Texas Code of Criminal Procedure Art 38.23, which states that (a) no evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas or of the Constitution or laws of the United States of America shall be admitted into evidence against the accused on trial in a criminal case.**

65.  Defendants intentional and/or reckless misconduct, as set forth above, entitle HELEN MAYFIELD and JAMES CAMPBELL to punitive damages from said defendants in an amount to be determined at trial.

FOURTH CLAIM FOR RELIEF

**Bevins Claims for JAMES CAMPBELL Arising From**

**Unlawful Searches and Seizures.**

66.  Plaintiff JAMES CAMPBELL realleges and incorporates herein Paragraphs 1-65 above.

67.  As a direct result of said defendants' false and misleading affidavits to Brazos County and U.S. Courts, JAMES CAMPBELL was subjected to broad and intrusive physical and electronic searches of CAMPBELL's rights under the Fourth Amendment of the United States Constitution to be secure in his home from unreasonable searches.  These illegal and intrusive searches and seizures have caused JAMES CAMPBELL extreme emotional pain and suffering, fear, insecurity, anguish and humiliation, all to his general damage in an amount to be determined at trial.

68.  Defendants' intentional and/or reckless misconduct as set forth above, entitle JAMES CAMPBELL to punitive damages from said defendants in an amount to be determined at trial.

FIFTH CLAIM FOR RELIEF

**HELEN MAYFIELD's Privacy Claims**

69. Plaintiff HELEN MAYFIELD realleges and incorporates herein Paragraphs 1-68 above.

70. From at least the day before HELEN MAYFIELD's arrest on August 10, 2007, until the date HELEN MAYFIELD was released from prison, unknown persons within the DOJ and/or the FBI, agencies of the federal government within the meaning of the U.S. Privacy Act, 5 U.S.C. 552 a, and Brazos County officials, began leaking information contained within DOT and FBI files to the national and international media regarding HELEN MAYFIELD and her arrest. In fact, the press was "tipped off" to HELEN MAYFIELD's arrest, her profession, place of residence and linked her to "global scams." Information was provided or leaked to the State Bar that HELEN MAYFIELD had been identified as a counterfeiter and this was placed on the State Bar Website.

Steve Fulhart of KBTX News and Holly Huffman reported that court MAYFIELD admitted that she had been involved in global scams since 2002. The writer indicated that MAYFIELD admitted these above facts to others. The writer also indicated that other counterfeit checks were found under her mattress in her home. The writer did not disclose that the checks were protected by attorney client privilege and were client property and were obtained without a warrant. The report also did not include the fact that MAYFIELD had lawfully obtained and possessed the checks and it was not through criminal activity but as part of the Good and Friendly and North American Free Trade Agreements and IRS Code 515, 519, 90. MAYFIELD was deliberately demonized as participating in criminal activity.

John Couso also wrote for ABC Channel 40 that MAYFIELD had been involved in several scams over the years involving thousands of dollars. He reported this had been revealed in an investigation. This was false and defamatory. He did not indicated his source for this false information.

71. Throughout MAYFIELD's arrest and incarceration, leaks were made about MAYFIELD being under surveillance for seven months by the FBI and Bryan/College Station. LT. JOHN ARNOLD of the College Station Police reported that the FBI gave him MAYFIELD's bank records and the SAR report

37

which he used to obtain the search warrant. The document the prosecutor admitted into evidence was a forged SAR which was unsigned. He indicated the FBI forged the amended document that was admitted into the record.

72. The Eagle Paper reported that MAYFIELD had cashed checks in exchange for a percentage of the cash. This was false and defamatory and had no source for the information. In recent court documents, the news media cite the prosecutor as their source as well as the FBI.

73. MAYFIELD went to the Justice Department for help. She was told that the Justice Department does not help individuals. DOJ only takes referrals from agencies.

74. Faye Miller, a client, revealed to MAYFIELD that this was not true. She reported that the FBI, the College Station and Brazos County prosecutors had talked to her. The Secret Service wanted to know what she thought MAYFIELD was doing. They advised her not to tell MAYFIELD. She reported that they talked to MAYFIELD'S other clients as they had seized all her State Bar complaints and were sharing this information with her and others. She presented the card of TRUMAN BODY, a Secret Service Agent and others. Holly Huffman and others with the Eagle Paper reported that MAYFIELD had been moving money to Hong Kong, Nigeria, Amsterdam, etc. in a global scam. This was false and defamatory information which tarnished the reputation of Mayfield and embarrassed her and her family.

75. The "leaks to the Media" by the DOJ, FBI, College Station Police and Brazos County Prosecutors and employees violated both the U.S. Privacy and DOJ/FBI regulations and policies.

76. The Privacy Act prohibits the DOT and the FBI from disclosing records kept by the DOJ and the FBI pertaining to HELEN MAYFIELD. The DOT and FBI, however, have chosen to ignore this federal law and leaked to the media details regarding its activities in investigating MAYFIELD and combating so-called terrorists. The Brazos County prosecutor leaked this information to the press and the documents

38

that KTBX and the Eagle Newspaper admitted into evidence in the defamation lawsuit had the Property of the Brazos County Prosecutor on the bottom of the documents.

77. Secret Service Agent NAPOLITANO told the court and the press that MAYFIELD was going to be taken before the grand jury for 1029 access charges as well as IRS and other charges. This public statement to the court and media concerning MAYFIELD violated DOJ regulations and FBI and secret service policies. DOJ regulations prohibit DOJ and FBI personnel from releasing information about a criminal suspect which could reasonably be expected to influence the outcome of a pending or future trial "from the time a person is that subject of a criminal investigation until any proceeding resulting from such an investigation has been terminated by trial or otherwise. "28 C.F.R. 50.2(b). Furthermore, when a suspect is arrested, the regulations prohibit releasing information "relating to the circumstances of an arrest or investigation [which] would be highly prejudicial or where the release thereof would serve no law enforcement function. "The regulations give even more detailed guidance when it comes to releasing information that generally tends to create dangers of prejudice without serving a significant law enforcement function. Therefore, personnel of the Department should refrain from making available the following …..reference to investigative procedures such as fingerprints." 28 C.R. 50.2(b)(6).

78. Notwithstanding the detailed regulations set forth alone, DOJ and/or FBI and City of College Station and Brazos County officials as part of the Joint Task Force per LT JIM ARNOLD, released specific information regarding their claims of checks and international/global scams and implied linkage to Brandon Mayfield and money laundering through the media and the internet implicating MAYFIELD AND stating that she admitted these facts when she had no such discussion and made no such admissions.

79. The reason for the regulations is publicly published by the FBI on its Website.

80. The actions of the DOJ/FBI , Bryan/College Station Police and Brazos County Prosecutors were intentional and willful, and these disclosures caused HELEN MAYFIELD to endure extreme mental

anguish and humiliation, embarrassment, damage to her general reputation, damage to her reputation

as a lawyer and impairment of her earning capacity. HELEN MAYFIELD has suffered and endured actual

damage and is entitled to compensatory damages from the Bryan/ College Station police and Brazos

County in an amount to be determined at trial, and for his reasonable and necessary costs of the action

together with reasonable attorney fees as determined by the Court. Plaintiff requests that the Court

seek an advisory verdict on this claim from the jury empanelled to try the other issues in this case.

SIXTH CLAIM FOR RELIEF

**Claim for Injunctive and Declaratory Relief re FISA**

**Searches and Surveillance**

81. Plaintiffs HELEN MAYFIELD and JAMES CAMPBELL reallege and
Incorporate herein Paragraphs 1-80.

82. Plaintiffs allege, based on information and belief, that pursuant to FISA they

were subjected to secret surveillance and searches of their family home, law office, vehicles and

communications. Plaintiffs allege, based on information and belief, that pursuant to FISA the

information collected by said secret surveillance and searches have been disseminated to unknown

agencies of the federal government including but not limited to the Department of Homeland Security,

The Department of Justice/Federal Bureau of Investigations, the Department of Treasury and the

National Security Agency, the Bryan/College Station Police Departments and Brazos County Prosecutors.

Prior to the commencement of this lawsuit, MAYFIELD and her court appointed lawyer requested that

the FBI and Bryan/College Station return her international documents and filed Motions in Brazos

County for the return of her property. The District Judge refused to set a hearing on the Motions and

continues to hold all of MAYFIELD's client files, personal, business and tax records of herself and her son,

her passport and bank book from Poplar Bank. This information was collected during illegal and unconstitutional searches and surveillance that were perpetuated against plaintiffs.

83. The collection, dissemination and retention of information pursuant to FISA and local police

Action as described herein, violate plaintiff's constitutionally protected right to be secure from

Unreasonable searches and seizures and constitutionally protected right to privacy.

Plaintiffs seek a declaration:

a. That the provisions of the Patriot's Act and FISA which permit the federal government to secretly collect, disseminate and retain information from a person without first requiring the government to demonstrate to a court the existence of probable cause that the person has committed a crime is unconstitutional;

b. That the provisions of the Patriot Act and FISA which permit the federal government to secretly perform "sneak and peek" physical searches of the home, office and vehicle of a person without first requiring the government to demonstrate to a court the existence of probable cause that the person has committed a crime, are unconstitutional;

c. That the provisions of the Patriot Act and FISA which permit the federal government to perform electronic surveillance and wiretaps of a person without first requiring the government to demonstrate to a court the existence of probable cause that the person has committed a crime, are unconstitutional.

d. That when a municipality has employees who commits perjury to create probable cause and falsifies, tampers with and alters and fabricates evidence to obtain a conviction in

41

violation of someone's civil rights and constitutional rights; they may seek damages for their injury.

84.                              Based on information and belief, plaintiffs allege that the federal government as part of the TASK FORCE utilized the challenged provisions of the Patriot Act and FISA to secretly and wrongfully collect, disseminate and retain information and communications from them,… Because Ashcroft, and the DOJ and FBI refused to divulge the full extent of said collection, dissemination and retention of information and communications violate plaintiffs Fourth Amendment right to be secure in their home, law office, vehicles and communications from unreasonable searches and seizures, and because plaintiffs have no other plain, speedy or adequate remedy at law, plaintiffs seek an injunction requiring defendants James Arnold, City of College Station, City of Bryan, Brazos County and unnamed defendants DOJ and the FBI:

   a.   To retrieve and destroy or return to plaintiffs all illegally collected,
        Disseminated and retained information and communication
        collected   Pursuant to FISA authorized searches and surveillance
        relating to plaintiffs from government agencies and computer
        databases;

   b.   To seek the return and destruction from agencies of other
        governments of all  information and communication
        collected pursuant to FISA authorized searches and surveillance
        relating to plaintiffs which was illegally collected and then
        disseminated to said agencies;

c.  To refrain from distributing to any requesting party any information
illegally collected or retained collected pursuant to FISA authorized
searches and surveillance relating to plaintiffs.

## SEVENTH CLAIM FOR RELIEF

### Claim for return of property improperly seized

85.     Plaintiffs Helen Mayfield and James Campbell reallege and incorporate herein
paragraphs 1-84, above.

86.     Prior to the commencement of this lawsuit, MAYFIELD requested that
defendants City of College Station, City of Bryan, Brazos County, the Police Department and
the JOINT TASK FORCE return all material seized from HELEN MAYFIELD AND JAMES CAMPBELL
pursuant to search warrants issued by the County Court of Law 2 and the U.S. DISTRICT COURT
Of Texas and return all copies of said material.  Although the City of College Station, City of
Bryan and Brazos County and the DOJ AND FBI report that they have copies of HELEN
MAYFIELD AND JAMES CAMPBELL, they have not returned them or the illegally obtained
record and files and they have refused to destroy them. Based on information and belief,
plaintiffs allege that copies of said materials have been disseminated to various government
agencies and departments and news media.

87.   Despite the fact that the JAMES CAMPBELL has never committed any crime, none
Of his records and files have been returned.  This includes all of his medical records since birth
and all legal files regarding his lawsuit for his closed head injury which had never been collected
and he has now lost his claim because of the seizure of his files. The forty two charges for

MAYFIELD for keeping client checks in her files have been dismissed but the City of College Station, City of Bryan, Brazos County and the DOJ AND FBI are insisting that copies of all material seized from her family home, law office, vehicle and bank remain available for inspection by additional government employees and agencies, and remain available to all government agencies and departments that received copies of the material. Because Helen Mayfield has no other plain, speedy or adequate remedy at law, she seeks an injunction requiring defendants and unnamed co-defendants Eric Holder, DOJ AND FBI to immediately return all copies of material or information seized, disseminated, during the investigation of Helen Mayfield. Helen Mayfield also seeks an injunction prohibiting defendants City of College Station, City of Bryan, Brazos County, Unnamed co-defendants Eric Holder, DOJ and FBI from using said material or information in any way, or disseminating said material or information relating to Helen Mayfield or her family to any government agency or government department or government employees, or to any non-governmental person or entity.

## EIGHTH CAUSE OF ACTION

### CIVIL RIGHTS VIOLATION—SUBSTANTIVE DUE PROCESS

88.     The allegations contained in paragraphs 1 through 87 are herein incorporated by reference, the same as if fully set forth verbally for any and all purposes of this pleading.

89.     **Section 1983**. The Civil Rights Act of 1871 (Ku Klux Klan Act), now codified as 42 U.S.C. Section 1983 as federal law provides: " Every person, who under color of any statute, ordinance, regulation, custom, usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United

44

States or any other person within the jurisdiction thereof to the deprivation of any other

person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action of law,

suit in equity, or other proper proceeding for redress." 42 U.S.C. Section 1983.

90.     The state action requirement for standing under 41 U.S.C. Section 1983 has more

commonly been referred to as "color of state law," from the statute itself.  HELEN MAYFIELD

AND JAMES CAMPBELL is informed and believe, and thereupon allege that in committing said

acts and /or omissions, Defendants Lt. James Arnold was an agent and employee of Defendant

City of College Station in conspiracy with and with the  City of Bryan, Texas, Brazos County and

was a member of the TASK FORCE acting in conspiracy with agents of the DOJ and FBI, the

unnamed co-defendants and was acting within such agency and employment and that

defendant James Arnold was acting under color of state law.

91.     42 U.S.C. Section 1983 requires that the conduct complained must have deprived

the person of some privileges or immunity secured by the Constitution or laws of the United

States.  As such, HELEN MAYFIELD alleges that the defendants, Lt. James Arnold, The City of

College Station, City of Bryan, Brazos County, Texas and the unnamed co-defendants, jointly

and/or severally deprived her and her son their Fourth Amendment rights and those rights,

privileges, and immunities secured by the Fourth Amendment to the Constitution incorporated

and applied to the states through the Fourteenth Amendment.  Defendants violated this

provision by the following actions, inter alia, and/or omissions:

   a.   By engaging in warrantless searches and seizures in order to obtain probable cause
        in violation of the Fourth Amendment and its "unreasonableness" standard.  Helen
        Mayfield and James Campbell's property was unlawfully seized and searched.  The
        seizure and search was objectively unreasonable;

45

**92.** **Section 1983—Municipality liability**. It is also well established that municipalities are liable under 42 U.S. C. Section 1983 for constitutional torts that are in compliance with the municipality customs, practices, policies or procedures.  A municipality is liable for constitutional deprivations visited pursuant to governmental customs even though such customs have not received formal approval through the body's official decision making channels.  In this case.  The City of College Station, Bryan, Texas and Brazos County is liable because it sanctioned the custom, practice and/or policy or procedure of illegal searches, illegal seizures and violating the citizen's rights to be free of unwanton searches and seizures. Defendant Lt. Arnold's actions were a customary practice and /or policy and procedure that was sanctioned by the City of College Station, City of Bryan, Texas, Brazos County out of which deprived HELEN MAYFIELD AND JAMES CAMPBELL of their civil rights by statute and by both the Texas and United States Constitution.  Liability for Brazos County is established under Section 1983 because the search and seizure of citizen's property with little or no justification, is a persistent, widespread practice of county employees, namely deputies, that although not authorized by officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official municipal policy.  The City of College Station and Bryan, Texas had actual and constructive knowledge of this practice, custom and /or policy or procedure and sufficiently numerous prior incidents of deputies committing perjury in order to obtain search and arrest warrants and fabricating and falsifying evidence to obtain convictions establishes custom and accession to that custom by Bryan/College Station policy makers.  The Bryan/College Station unspoken policy illegal searches and seizures is a decision that reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory

46

right will follow the decision. In the alternative, the cities of Bryan/College Station is liable under Section 1983 for failure to adopt a policy precluding deputies and officers from illegal searches and seizures because such failure to adopt such a policy is one of intentional choice.

93. Moreover, the cities of Bryan/College Station is liable for inadequate training of deputies and police officers under Section 1983. Liability attaches to the cities of Bryan/College Station and their respective police departments because their failure to train amounts to deliberate indifference to the rights of the persons with whom the police come in contact. In particular, HELEN MAYFIELD alleges that the training program in relation to the tasks the particular police officers must perform is inadequate in the respect that the program fails to teach new police officers that illegal searches and seizures violates the citizen's constitutional rights. As such, the deficiency in training actually caused defendant Lt. Arnold to violate the constitutional rights of HELEN MAYFIELD AND JAMES CAMPBLELL.

94. **Section 1983—Qualified Good Faith Immunity**. Qualified good faith immunity stands for the proposition that even though the civil rights of a complainant may have been violated, if the police officer engaged in the conduct in good faith there is no liability for the individual. The standard by which the police officer's entitlement to good faith qualified immunity is objective not subjective. Defendants, the cities of Bryan/College Station's action judged by such objective standard protects, "all but the plainly incompetent or those who knowingly violate the law." The determination of objective reasonableness must be based on the version of the facts most favorable to the Plaintiff. To the extent that creditability questions exist, a fact-finder continues to be necessary. In the instant case, HELEN MAYFIELD alleges that defendant Lt. James Arnold is not entitled to a claim of "qualified good faith

immunity." Importantly, Defendant Lt. James Arnold never had a good faith belief in his conduct because he acted in a manner demonstrating that he was plainly incompetent and knowingly violated HELEN MAYFIELD AND JAMES CAMPBELL'S RIGHTS. When the facts are taken in the light most favorable to the plaintiff, it is clear that the Plaintiff was engaging in lawful activity in her home and home office. The reason for the warrantless searches given on the sworn record by Lt. James Arnold was that the plaintiff HELEN MAYFIELD had never been convicted on anything but an unpaid parking ticket so he had to "enter her home in order to obtain enough evidence to sustain a warrant." This wanton disregard for the privacy and constitutional rights of the Plaintiff does not warrant the application of qualified good faith immunity because he never had probable cause or a reasonable belief that a crime was being committed when he entered her home without a warrant. HELEN MAYFIELD AND JAMES CAMPBELL asserted a violation of his constitutional right to be free from unreasonable search and seizure and her right to privacy; this right was clearly established at the time of Defendant Lt. Arnold's actions. Moreover, Defendant Arnold's action were objectively unreasonable in the sense that he knew or reasonably should have known that the actions taken within his authority or responsibility would violate the constitutional rights of HELEN MAYFIELD AND JAMES CAMPBELL. Thus the defendants, the cities of Bryan/College Station police departments failed to carry out its police action in good faith and forfeited its claim to immunity. In the further alternative, the violation of the basic constitutional rights of HELEN MAYFIELD under the United States and State Constitution as well as the violation of statutory law under 42 U.S.C. Section 1983 mandate this suit.

48

## NINTH CAUSE OF ACTION

### 18 U.S.C. section 241, violation of and 18 U.S. C. section 242

95. The allegations contained in paragraphs 1 through 87 are herein incorporated by reference, the same as if fully set forth verbally for any and all purposes of this pleading.

96. Under 18 U.S.C. Section 241, a law enforcement officer is liable if he or she enters into a conspiracy to deprive any citizen of any right or privilege guaranteed by the constitution. For this Section, the only act that is necessary for a violation is the act in furtherance of the conspiracy. Jim Lott, the judge of County Court of Law 2, and the prosecutors of Brazos County in their individual capacity concealed the concocted affidavit and refused to present it to Mayfield upon request and signed a totally different warrant on four occasions and refused to file those copies or provide MAYFIELD or the Court a copy of the warrant or affidavit that was submitted to the 10th Court of Appeals.

97. Lt. James Arnold stated that the FBI gave him the forged Suspicious Activity Report which he used to form the basis to obtain a search warrant. He and the prosecutors concealed all copies of the affidavits, booking information, grand jury witness list and information, warrants, e-mails, client files, Western Union and money gram records from the jury and the plaintiff. Only the FBI, Secret Service and local police had access to the e-mail files, western union receipts, and bank documents. All of these specific records were altered. Witnesses were coached to commit perjury. If they did not agree to commit perjury, others

49

were substituted in their place. The trial court and Court of Appeals stated that Mayfield could not see or have a copy of these documents or the altered tape used to obtain Mayfield's conviction.

98.    As a direct result of the defendant's conspiracy to violate Mayfield's Civil Rights and defendant's intentional/and or reckless submission of concocted false affidavits, false reports to the media, altering of the checks in question, creating and altering e-mails, altering Western Union wires, concealing the fact that no checks were cashed by Mayfield that were counterfeit, coaching witnesses to commit perjury, the Secret Service testifying at the trial stating that "Mayfield had led a criminal life when she could have a legal job" without any basis for this assessment and testifying that the DOJ would be immediately convening a "secret grand jury" to indict her for 1029 access crimes among other crimes.  Social Work and law were not considered legal enterprises for Mayfield.

99.    Defendant's conduct caused Mayfield and her son to lose their jobs, get evicted from their town house and suffer extreme, emotional pain and suffering, anguish and humiliation, all to her general damage in the amount to be determined at trial.

100.    Defendant's intentional and or reckless misconduct as set forth, above entitle Helen Mayfield and her son James Campbell to punitive damages from said defendants in an amount to be determined at trial.

WHEREFORE, plaintiffs pray for relief, as follows:

101. On plaintiffs HELEN MAYFIELD AND JAMES CAMPBELL'S First Claim of Relief, for special and general damages, together with punitive damages, in amounts to be determined at trial

From defendants Lt. James Arnold, the police departments and cities of College Station and Bryan, Texas, Brazos County arising from Mayfield's false arrest and imprisonment for 42 counts of forgery of a financial instrument obtain by the perjured document of Lt. Arnold signed by Justice Boyette with full knowledge of the Brazos County Prosecutors who knew he had no authority to execute such a search or warrant, all of which caused her to endure extreme mental anguish and humiliation, embarrassment, damage to her general reputation, reputation as a lawyer and impairment of her earning capacity.

On Plaintiff Helen Mayfield's Second Claim for Relief, general damages, together with punitive damages, in an amount to be determined at trial from defendants James Arnold, the police departments of the City of College Station and Bryan, Texas and Brazos County arising from their denial of her son's familial companionship, love and society.

On Plaintiffs Helen Mayfield and James Campbell's Third Claim for Relief, general damages, together with punitive damages, in an amount to be determined at trial from defendants James Arnold, the police departments of the City of College Station and Bryan, Texas, the cities of Bryan/College Station and Brazos County arising from their denial of his constitutionally guaranteed right to be with his mother, and from the denial of his mother's familial companionship, love and society.

On Plaintiff Helen Mayfield's Fourth Claim for Relief, general damages, together with punitive damages, in an amount to be determined at trial from defendants James Arnold, the police departments of the City of College Station and Bryan, Texas and Brazos County arising from their denial of her son's familial companionship, love and society.

On Plaintiffs Helen Mayfield and James Campbell's Fifth Claim for Relief, special and general damages, together with punitive damages, in an amount to be determined at trial from defendants James Arnold, the police departments of the City of College Station and Bryan, Texas, the cities of Bryan/College Station and Brazos County arising from the illegal and intrusive searches, surveillance and seizures from her family home, law office, home office, vehicles and communications, all of which caused her to endure extreme mental anguish and humiliation, embarrassment, damage to her general reputation, damages to her reputation as a lawyer and impairment of his earning capacity.

On Plaintiffs Helen Mayfield and James Campbell's Sixth Claim for Relief, special and general damages, together with punitive damages, in an amount to be determined at trial from defendants James Arnold, the police departments of the City of College Station and Bryan, Texas, the cities of Bryan/College Station and Brazos County arising from the illegal and intrusive searches, surveillance and seizures from her family home, law office, home office, vehicles and communications, all of which caused her to endure extreme mental anguish and humiliation, embarrassment, damage to her general reputation, damages to her reputation as a lawyer and impairment of his earning capacity.

On Plaintiffs Helen Mayfield and James Campbell's Sixth Claim for Relief, special and general damages, together with punitive damages, in an amount to be determined at trial from defendants James Arnold, the police departments of the City of College Station and Bryan, Texas, the cities of Bryan/College Station and Brazos County arising from the illegal and intrusive searches, surveillance and seizures from her family home, law office, home office, vehicles and communications, all of which caused her to endure extreme mental

anguish and humiliation, embarrassment, damage to her general reputation, damages to her reputation as a lawyer and impairment of his earning capacity.

On Plaintiffs Helen Mayfield and James Campbell's Seventh Claim for Relief, special and general damages, together with punitive damages, and reasonably incurred attorney fees, from defendants in an amount to be determined at trial from defendants James Arnold, the police departments of the City of College Station and Bryan, Texas, the cities of Bryan/College Station and Brazos County arising from wrongful and inaccurate disclosures and the illegal and intrusive searches, surveillance and seizures from her family home, law office, home office, vehicles and communications, all of which caused her to endure extreme mental anguish and humiliation, embarrassment, damage to her general reputation, damages to her reputation as a lawyer and impairment of his earning capacity.

On Plaintiffs Helen Mayfield and James Campbell's Eighth Claim for Relief, special and general damages, for a declaration that the portions of the Patriot Act and FISA which permit the federal government to (a) secretly collect, disseminate and retain information from a person, (b) secretly perform "seek and peek" physical searches of the home, office and vehicle of a person, and (c) perform electronic surveillance and wiretaps of the home, office and vehicles of a person, and (c) perform electronic surveillance and wiretaps of a person, all without first requiring the government to demonstrate to a court the existence of probable cause that the person has committed a crime, are unconstitutional. Plaintiff seeks general and punitive damages, and reasonably incurred attorney fees, from defendants in an amount to be determined at trial from defendants James Arnold, the police departments of the City of College Station and Bryan, Texas, the cities of Bryan/College Station and Brazos County

anguish and humiliation, embarrassment, damage to her general reputation, damages to her reputation as a lawyer and impairment of his earning capacity.

On Plaintiffs Helen Mayfield and James Campbell's Seventh Claim for Relief, special and general damages, together with punitive damages, and reasonably incurred attorney fees, from defendants in an amount to be determined at trial from defendants James Arnold, the police departments of the City of College Station and Bryan, Texas, the cities of Bryan/College Station and Brazos County arising from wrongful and inaccurate disclosures and the illegal and intrusive searches, surveillance and seizures from her family home, law office, home office, vehicles and communications, all of which caused her to endure extreme mental anguish and humiliation, embarrassment, damage to her general reputation, damages to her reputation as a lawyer and impairment of his earning capacity.

On Plaintiffs Helen Mayfield and James Campbell's Eighth Claim for Relief, special and general damages, for a declaration that the portions of the Patriot Act and FISA which permit the federal government to (a) secretly collect, disseminate and retain information from a person, (b) secretly perform "seek and peek" physical searches of the home, office and vehicle of a person, and (c) perform electronic surveillance and wiretaps of the home, office and vehicles of a person, and (c) perform electronic surveillance and wiretaps of a person, all without first requiring the government to demonstrate to a court the existence of probable cause that the person has committed a crime, are unconstitutional. Plaintiff seeks general and punitive damages, and reasonably incurred attorney fees, from defendants in an amount to be determined at trial from defendants James Arnold, the police departments of the City of College Station and Bryan, Texas, the cities of Bryan/College Station and Brazos County

arising from wrongful and inaccurate disclosures and the illegal and intrusive searches, surveillance and seizures from her family home, law office, home office, vehicles and communications, all of which caused her to endure extreme mental anguish and humiliation, embarrassment, damage to her general reputation, damages to her reputation as a lawyer and impairment of his earning capacity. Plaintiff also seeks an injunction requiring defendant and unnamed co-defendants Eric Holder, the DOJ and FBI to (a) Retrieve all illegally collected data from government agencies and computer databases, (b) seek the return and destruction from agencies of other governments of all information and communication relating to Plaintiffs which were illegally collected and then disseminated to said agencies, and (c) refrain from distributing to any requesting party any information illegally collected or retained to plaintiffs.

On Plaintiff's Eighth Claim for Relief, for an injunction requiring defendants James Arnold, the Cities of Bryan and College Station, their respective police departments, Brazos County, Eric Holder and the DOJ and FBI to immediately return all material or information seized during the investigation of Helen Mayfield and requiring defendants to destroy all copies of said material retained by the Federal government.  Helen Mayfield also seeks an injunction prohibiting defendants named and unnamed from using said material or information in any way, or disseminating said material or information relating to Helen Mayfield or her family to any government agency or government department or government employee, or to any non-government person or entity.

Plaintiffs also seek their cost and disbursements necessarily incurred herein.

DATED  this July 13, 2012.

Respectfully Submitted,

54

Helen Tyne Mayfield
4753 Redstart Street
Houston, Texas 77035
832-969-4135

James Noel Shaalom Campbell
2701 Kent Street
Bryan, Texas 77802